National Bond and Investment Company *v.*
Gill, Appellant.

Argued May 5, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Samuel G. Wagner,* with him *George Y. Meyer,* for appellant.

*Harold L. Rothman,* with him *H. Lee Ratner,* for appellee.

OPINION BY CUNNINGHAM, J., September 30, 1936:

The questions involved under this appeal are purely of law and arose out of these facts. On July 31, 1934, Louis Kaufman came into possession of a Pontiac automobile under a bailment lease from Laylock Motors Company, a dealer in new and used cars. The lease was in the usual form and contained an option to the bailee to purchase the car at the end of the term upon compliance with its provisions and the payment of an additional sum of one dollar. The price of the car was $801. and the amount involved under the lease, including the cost of financing, was $904.88. The instrument provided for a down payment of $270. and the payment of sixteen monthly installments of rental of $39.68 each, aggregating $634.88. On the day of its execution the interest of the bailor in the lease and car was purchased by National Bond and Investment Company, a financing company and the appellee herein.

By December 23, 1934, Kaufman, the bailee, had paid to National Bond and Investment Company three of the monthly installments of rent, or $119.04, thereby reducing his total liability to it, as bailor, to the sum of $515.84. About midnight on that date and while Kaufman was driving the automobile toward Pittsburgh upon a public road in Washington County, it was wrecked, practically beyond repair, when a Chevrolet coupe, owned and driven by Patrick D. Gill, appellant herein, crashed into it.

Alleging that the damages to the Pontiac car had been caused by the negligence of Gill, National Bond and Investment Company, in its capacity as bailor under the lease, brought an action of trespass against him in the court below, in which it claimed damages in the sum of $515.84—the aggregate of the rental payments then remaining unpaid. Testimony as to the market value of the car at the time of the accident ranged from $750. down to $510. No suit was brought by Kaufman, the bailee.

A second trial of the bailor's action resulted in a verdict in its favor for $410. Gill's motions for judgment in his favor upon the whole record or a new trial were denied and he has appealed from the judgment entered on the verdict.

As to the motion for judgment n. o. v. it is sufficient to say there was abundant evidence from which a jury could reasonably find that Gill was operating his car in a negligent manner and that the damages to the Pontiac car and the slight personal injuries suffered by Kaufman were attributable to the negligence of Gill.

No question of contributory negligence upon the part of Kaufman was involved under the issue then on trial. He was driving as a bailee of the car; there was no suggestion in the evidence that he was in any way the agent or servant of the plaintiff bailor. It follows that any negligence of which he may have been guilty could not be imputed to the plaintiff in the action: *General Motors Acceptance Corporation v. Baltimore & Ohio Railroad Co.,* 97 Pa. Superior Ct. 93; *Gibson v. Bessemer & L. E. R. R. Co.,* 226 Pa. 198, 75 A. 194. The motion was properly denied.

The principal contention in support of appellant's motion for a new trial (8th and 9th assignments) is that the learned trial judge, SOFFEL, J., erroneously excluded the offer of his counsel to show that Kaufman, the bailee, had, a few days after the collision, negotiated a settlement for all damages to the car and had accepted from appellant's insurance carrier the sum of $263 "in full payment and settlement of all claims and demands of every kind" arising out of the occurrence. The "type of loss" mentioned on the draft issued to Kaufman and offered in evidence is "property damage and personal injury." There was no offer to show that Kaufman acted in any way for his bailor in making the settlement, or that any relation except that of bailor and bailee ever existed between appellee

and Kaufman, or that appellee even had notice of the negotiations or settlement. In sustaining the objection to the admission of the proposed evidence the trial judge said:

"Two interests are concerned here, that of the bailee and that of the bailor. These interests are distinct, separate and apart. In the absence of evidence to show that the bailee was acting as agent for the bailor in the acceptance of this amount of money, this release is incompetent, irrelevant and immaterial. No release acceptance by the bailee for any damages done to this particular automobile exempts the defendant, if he is liable, from liability to the bailor. The interest of the bailor is that of an owner. The interest of the bailee is that of an individual entitled to temporary possession. The two interests are wholly distinct, separate and apart. This evidence is, under the facts, incompetent, irrelevant and immaterial, and will not be accepted. An exception is noted." We think this ruling was entirely correct.

Counsel for appellant direct attention to the rule that when property held under a contract of bailment is injured by a third person, the bailee, in the absence of a suit by the bailor, may sue for and recover damages commensurate with the full extent of the injuries inflicted, and will hold the excess over his own interest in trust for the bailor. They then argue that, by analogy, the same effect should be given to the settlement made by this bailee as would be given, under the rule, to a verdict for full damages. The question raised by these assignments has not been decided, so far as we are aware, by either of our appellate courts. Both sides have cited cases from other jurisdictions; all of them, however, involved conditional sales contracts or chattel mortgages and related to the effect of voluntary settlements made by conditional sales vendees or by mortgagors. For the reasons stated in *Stern & Co. v. Paul et al.,* 96 Pa. Superior Ct. 112, and *General*

*Motors Acceptance Corp. v. Baltimore and Ohio Railroad Co.,* supra, such cases are of no value to us upon the present question. Moreover, they indicate an almost evenly balanced difference of opinion with respect to the effect of a settlement upon the rights of a vendor or mortgagee. Whatever may be the right of a bailee, under a contract of bailment, to sue a tortfeasor for all damages to the subject of the bailment, and whatever may be the effect of a verdict so recovered upon the rights of the bailor, there are many reasons why the settlement made by the bailee in this case should have no effect upon the rights of his bailor.

In the first place, under this contract each of the parties had a separate and distinct interest in the car, as set forth at length by this court in *General Motors Acceptance Corp. v. Baltimore & Ohio Railroad Co.,* supra, and each had a separate right of action against this appellant. Simultaneous suits might have been brought here just as in that case.

Of course, the bailee had a right to settle for his own damages, but to hold that a settlement made by him would bar the right of his bailor to recover from the tortfeasor the value of its ownership and interest in the car would be unreasonable and unjust.

For instance, a bailee threatened with a defense of contributory negligence, or conscious of the fact that he had been even partially responsible for the accident, would naturally settle at a low figure. If appellant's contention should be sustained the results of the contributory negligence of the bailee would, in violation of a long established rule of law, be charged against the bailor. Such an absurdity is only one of many which would arise from time to time in cases of this kind. It is also significant that this bailee accepted for his personal injuries and property damages combined a lower figure than the jury found the bailor was entitled to receive for its individual interest in the

car. The eighth and ninth assignments are accordingly overruled.

By the third assignment it is alleged that the trial judge erred in charging the jury as to the measure of damages in the event of a finding that appellant had been negligent. Upon this question the trial judge charged:

"The measure of damages in this case is not the difference in market value of the automobile immediately before the accident and immediately after the accident; that is not the measure of damages; it may have a bearing on the question of damages. The measure of damages is the value of the interest of the owner, that would be the plaintiff, in this automobile; and to get at the value there are certain things that you have to take into consideration; you have to take into consideration the face value of that lease at the time it was acquired; you have to take into consideration the period of time that the lease had to run and the payments that were made on account of the lease; and you have to discount that amount by the fact that there was in Kaufman, the lessee, a right to purchase that [car] if he paid the total sum due and the additional dollar. That is the measure of damages, the value of the interest of the owner, the bailor, in the automobile. . . . . . . The actual damage done to that car is a matter of fact for you under the evidence. Under no circumstances, if your verdict is in favor of the plaintiff, can it be for a sum larger than the value, the amount of plaintiff's interest."

The instructions complained of were in accordance with the principles announced by this court in *General Motors Acceptance Corporation v. Baltimore & Ohio R. R. Co.,* supra, and the assignment is therefore overruled.

During the trial there was uncontradicted evidence to the effect that four persons were riding in the front seat of appellant's car at the time of the accident. The

trial judge, after quoting the provisions of the Motor
Vehicle Code relative to the occupation of a front seat
by more than three persons and referring to the pro-
vision that a passenger seat is defined as sixteen inches
of space, continued: "Now, there is nothing in the law
that says that the mere fact that you have four persons
on a seat, contrary to the law, constitutes negligence;
but it is a factor to be taken into consideration by you
in deciding whether or not this car operated by Gill
was operated in a negligent manner. It is not negli-
gence in and of itself, even though it may have been
contrary to the law; it is a factor to be taken into con-
sideration."

It is apparent that the statute was merely referred
to as a standard of care by which negligence might be
judged. Under the recent case of *Mahoney v. City of
Pittsburgh et al.,* 320 Pa. 44, 181 A. 590, the instruc-
tion was unobjectionable.

By the sixth assignment appellant complains of the
refusal of his motion to strike out the answer of Kauf-
man to a question with respect to the condition of the
car at the time of the accident. The testimony in ques-
tion reads:

"Mr. Ratner. Q. What condition was that car in
before the accident? A. It was perfect, brand new
car. Mr. Wagner: I object to that 'perfect' business
and move it be stricken out. The Court: It was a
brand new car—is that right? A. Yes. The Court:
We will let the jury assume what the condition of a
brand new car was."

As there was considerable additional testimony rela-
tive to the length of time the car had been in use, the
mileage it had traveled and its general condition at
the time of the accident, appellant was not prejudiced
in any way by the refusal of his motion: *Barrilo v.
Frank et al.,* 116 Pa. Superior Ct. 461, 177 A. 58.

We have examined all the remaining assignments and
are convinced that each of them should be overruled.

The case was carefully and fairly tried along lines prescribed by this court and we see no reason for awarding a new trial.

Judgment affirmed.