434 A.2d 1253

**Stanley J. SMIALEK, Administrator of the Estate of Jean Martha Smialek, Deceased, Appellant,**

v.

**CHRYSLER MOTORS CORPORATION, North Hills Passavant Hospital, a Corporation, and Donald Drewel.**

**Stanley J. SMIALEK, Administrator of the Estate of Jean Martha Smialek, Deceased**

v.

**CHRYSLER MOTORS CORPORATION, North Hills Passavant Hospital, a Corporation, and Donald Drewel.**

**Appeal of NORTH HILLS PASSAVANT HOSPITAL.**

Superior Court of Pennsylvania.

Argued April 30, 1981.

Filed Sept. 4, 1981.

Petition for Allowance of Appeal Denied Jan. 15, 1982.

498

William S. Schweers, Jr., Pittsburgh, for Stanley J. Smialek.

Thomas J. Reinstadtler, Pittsburgh, for Chrysler, appellee.

Donald W. Bebenek, Pittsburgh, for North Hills Passavant Hospital.

S. Asher Winicoff, Pittsburgh, for Drewel, appellee.

Before CERCONE, President Judge, and BROSKY and HOFFMAN, JJ.

BROSKY, Judge:

Appellant, Smialek, commenced this action against Chrysler Motors Corporation, North Hills Passavant Hospital (hereinafter Passavant) and Donald Drewel to recover damages for personal injuries suffered by his now deceased wife as a result of an automobile accident and treatment following it. A verdict was rendered in favor of Mr. Smialek and

against Passavant and Donald Drewel. The jury found no liability on the part of Chrysler. Post-trial motions for new trial and judgment notwithstanding the verdict filed by Mr. Smialek and Passavant were denied and these appeals, now consolidated followed. The central issue raised in Mr. Smialek's appeal is whether the lower court erred in its instruction to the jury concerning the potential strict liability of Chrysler. Finding that the instruction did erroneously suggest to the jury that a negligence standard was to be employed in this case, we reverse the order of the lower court.

Passavant raises the issue of whether the lower court erred in instructing the jury that it could assess a portion of the damages it awarded against Passavant, if the hospital were found negligent. Passavant also argues that even if an apportionment of the damages were appropriate, the facts do not support the jury's verdict. We find no merit to Passavant's claims and affirm the lower court's denial of its motion.

The facts surrounding the accident are as follows.

Appellee, Drewel, was the driver of an automobile which struck the Chrysler Cricket driven by Mrs. Smialek while that car was stopped at an intersection waiting to make a left turn. Upon impact, the tank of the Cricket was punctured, gas spilled on the highway and the Cricket caught on fire. Prior to being rescued from the automobile, Mrs. Smialek had inhaled smoke and had been exposed to heat from the flames. She was taken to Passavant Hospital where she was put on a respirator because she was having difficulty breathing. Mrs. Smialek was given Pavulon, a muscle paralyzing drug, so that she would be unable to remove the respirator tube. The respirator then became her sole mechanism for breathing. Mrs. Smialek was found at the front of her hospital bed with the tube detached. Efforts to resuscitate her failed and she was pronounced dead.

Mr. Smialek proceeded against Chrysler on a strict liability theory alleging that the design of the Cricket was defective and that the defect was a proximate cause of the injuries suffered by the decedent.

■ As the Pennsylvania Supreme Court explained in *Berkebile v. Brantly Helicopter Corporation*, 462 Pa. 83, 337 A.2d 893 (1975).

> Strict liability requires, in substance, only two elements of requisite proof: the need to prove that the product was defective, and the need to prove that the defect was a proximate cause of the plaintiff's injuries. Id., 462 Pa. at 93, 94, 337 A.2d at 898 (footnote deleted).

In *Berkebile*, the Supreme Court discussed the seminal case of *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966), in which the court held that the seller of a product would be responsible for injury caused by his defective product even if he had exercised all possible care in its design, manufacture and distribution. In *Berkebile*, supra, the court held that "the 'reasonable man' standard *in any form* has no place in a strict liability case." Id., 462 Pa. at 96, 337 A.2d at 900 (emphasis added).

In analyzing the correctness of the charge on proximate cause given in that case, the court found error in the lower court's instruction that "such a consequence, under all the surrounding circumstances of the case must have been foreseeable by the seller." The charge was improper because, as the court explained, "To require foreseeability is to require the manufacturer to use due care in preparing his product. In strict liability, the manufacturer is liable even if he has exercised all due care." *Berkebile*, supra, 462 Pa. at 97, 337 A.2d at 900.

In *Azzarello v. Black Brothers Co., Inc.*, 480 Pa. 547, 391 A.2d 1020 (1978), the Supreme Court explained the basis for the imposition of strict liability in products liability cases when it wrote:

> The realities of our economic society as it exists today forces the conclusion that the risk of loss for injury resulting from defective products should be borne by the suppliers, principally because they are in a position to absorb the loss by distributing it as a cost of doing business.... Courts have increasingly adopted the posi-

tion that the risk of loss must be placed on the supplier of the defect without regard to fault or privity of contract. Id., 480 Pa. at 553, 391 A.2d at 1023, 1024 (footnote deleted).

In *Azzarello*, supra, the court explained that the question of whether a product is defective reaches the jury only after the court has weighed the relative risks and utility of the product and determined that, under plaintiff's averment of the facts, recovery would be justified. Id., 480 Pa. at 558, 391 A.2d at 1026.

In the *Azzarello*, supra, opinion the court discussed what it considered to be an adequate instruction. The court explained:

We believe than an adequate charge to the jury, one which expresses clearly and concisely the concept of "defect," while avoiding interjection of the "reasonable man" negligence terminology, is the jury instruction directed to the definition of a "defect," which was fashioned in large part by the Pennsylvania Supreme Court Committee for Proposed Standard Jury Instruction, Civil Instruction Subcommittee:

"The [supplier] of a product is the guarantor of its safety. The product must, therefore, be provided with every element necessary to make it safe for [its intended] use, and without any condition that makes it unsafe for [its intended] use. If you find that the product, at the time it left the defendant's control, lacked any element necessary to make it safe for [its intended] use or contained any condition that made it unsafe for [its intended] use, then the product was defective, and the defendant is liable for all harm caused by such defect."

Pennsylvania Standard Jury Instruction 8.02 (Civil), Subcommittee Draft (June 6, 1976).

Id., 480 Pa. at 559, 560, 391 A.2d at 1027.

In the beginning of his charge in the present case, the judge instructed the jury in accordance with the proposed instruction. However, he continued, telling the jury,

Now, Chrysler Motors Corporation does not have a duty to design an accident proof automobile. Chrysler is, how-

ever, required to take reasonable steps, within the limits of technology, to design and produce an automobile that will minimize the unavoidable damages, or rather, dangers of an automobile accident.

Later, he told the jury,

There are some things you should consider in determining, in fact, whether the location of the tank was a design defect, and they are these following factors: First, you should consider the *likelihood whether there is a likelihood or isn't, that the product, as designed, would result in injury to a user.* In this case you should consider the likelihood or the lack of a likelihood that the Cricket, as it was designed, would, in an accident situation like this one, cause or fail to protect an occupant from injury...

And if you find that an accident of this kind was likely or not likely to occur, then that would be a factor to consider in the balancing formula on danger. If you so find, you should also consider the likelihood that an automobile designed in this manner in which the Cricket model was designed, and circumstances such as you find occurred, experienced a fire resulting from the ignition of the fuel system. And if you find such a likelihood of injury, then you should consider this factor in deciding whether the automobile was dangerous. Another factor that you should consider is the seriousness of the potential injury in such circumstances. In other words, what can a fire produce in terms of occupants of a car . . . . applied to this case, the question would be did the design of the Cricket lack something necessary for adequate performance of its function, namely to provide a safe compartment for the transportation of occupants of the motor vehicle. That it would be designed not to be crash proof or to be absolutely safe against all risks on the road, but to provide *reasonable safety against foreseeable risks of the road.*

As was explained in *Berkebile,* "Foreseeability is not a test of proximate cause; it is a test of negligence." Id., 462 Pa. at 97, 337 at 900.

The court also told the jury "Another thing you should consider is the ability of the manufacturer to eliminate an unsafe characteristic that you find in the car without impairing the usefulness, or significantly increasing its cost."

In *Azzarello,* supra, the court cited with approval the following sentences.

> The Restatement of Torts has analyzed negligence, described it as a balancing of the magnitude of the risk against the utility of the risk, and listed the factors which go into determining the weight of both of these elements. This analysis is most helpful and can be used with profit by trial and appellate judges, and by students and commentators. But it is not ordinarily given to the jury.

*Azzarello,* supra, 480 Pa. at 557, 391 A.2d at 1026. The quoted portion of the charge, in the present appeal, then, employs a negligence standard in a strict liability case and additionally, gives to the jury an issue that is to be examined by the court.

The lower court erred in its use of negligence terms in the charge. In *MacDougall v. Ford Motor Company,* 214 Pa.Super. 384, 257 A.2d 676 (1969), this court distinguished the evidentiary standards employed in negligence actions from those used in product liability cases, saying that the latter are the same standards used in warranty cases. Having explained that a reasonable care standard is used in negligence actions, the court explained that,

> In contrast, the concern of both § 402A and warranty law is with the fitness of a product, not the conduct of the producer as measured by due care. While proof of a mechanical malfunction does not support an inference of the absence of due care in the construction or design of equipment, it is circumstantial evidence of the unfitness of the equipment. Accordingly, we hold that the occurrence of a malfunction of machinery in the absence of abnormal use and reasonable secondary causes is evidence of a "defective condition" within the meaning of § 402A, as it is evidence of lack of fitness for warranty liability.

Id., 214 Pa.Super. at 391, 257 A.2d at 680, see *Kuisis v. Baldwin-Lima-Hamilton Corp.*, 457 Pa. 321, 319 A.2d 914 (1974).

Of course, the lower court could and should have instructed the jury that a malfunction is evidence of a defect if the automobile was used normally. That is, they might find no defect if they find that being struck is abnormal use. Evidence which would be admissible in a negligence case to prove "abnormal use" is admissible in a strict liability case only for the purpose of rebutting the plaintiff's contentions of defect and proximate cause." *Berkebile*, supra, 462 Pa. at 99, 337 A.2d at 901.

The correct charge, then, would have instructed the jury that if they found that the automobile was being used in an abnormal manner, its malfunction would not necessarily have indicated that it was defective.

The instruction given, on the other hand, employed a due care standard that is not to be applied in strict liability cases.

Appellant-Passavant argues that the testimony of the expert witness called by Mr. Smialek was insufficient to allow the jury's consideration of it. We do not agree.

As our court explained in *Kravinsky v. Glover*, 263 Pa.Super. 8, 21, 22, 396 A.2d 1349, 1356 (1979),

Expert testimony is admissible when, *taken in its entirety*, it expresses reasonable certainty that the accident was a substantial factor in bringing about the injury. (Emphasis in original) (footnote deleted).

And,

... the expert need not express his opinion in precisely the same language we use to enunciate the legal standard. Id., 263 Pa.Super. at 22, 396 A.2d at 1356.

In the present case, the expert testified in part as follows:

My opinion is that the medical care provided by the hospital and its personnel, particularly on the night of the

8th and the early morning of January 9th, did not conform to the conventional and prevailing medical standards. . . .

If Mrs. Smialek had gotten the benefit of this kind of care [care which conformed to prevailing standards] the extubation would not have occurred.

In answer to the question ". . . Doctor, in your opinion was the hospital's failure to provide such care a substantial contributing cause in bringing about her death?" He replied, "Yes, sir, it was the direct cause."

The testimony met the standards established in *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978) and *Kravinsky*, supra.

■ Appellant, Passavant Hospital, contends that the lower court erred in instructing the jury that damages could be apportioned between it and the other defendants. In support of its contention the hospital cites the Restatement of Torts 2d § 457 which states,

If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires."

and, (d) Comment (c) to the sections states in part:

He [the original tortfeasor] is, therefore, as fully responsible for the negligent manner in which the nurses or clerical staff perform their part as he is for the negligent manner in which a physician or surgeon treats the case or diagnosis the injuries or performs an operation."

Moreover, comment (d) adds:

He is not answerable for harm caused by misconduct which is extraordinary and, therefore, outside of such risks.

In *Lasprogata v. Qualls*, 263 Pa.Super. 174, 397 A.2d 803 (1979), the plaintiff had been involved in an auto accident as a result of which he sustained injuries that were treated with the performance of an operation of his femur. The plaintiff brought suit against the driver which was conclud-

ed when he signed a release as to the driver only. Subsequently, he sued the physician who performed the surgery, the hospital and the manufacturer and distributor of surgical products involved. On appeal from a grant of summary judgment for the driver, this court discussed the apportionment of damages and wrote,

> As we have held in *Embry v. Borough of West Mifflin, et al.*, 257 Pa.Super. 168, 390 A.2d 765 (1978), to the extent that the acts of the original tortfeasor and those of the physician are capable of separation, the damages should be apportioned accordingly. (footnote deleted)

Id., 263 Pa.Super. at 179–180, 397 A.2d at 805, 806.

The court continued noting

> Although the posture of Pennsylvania law in accordance with § 457, supra, would seem to be at odds with the principle of the separateness of liability between the tortfeasor and the doctor in this case, there is no inconsistency present. This is so because the injured plaintiff could have brought suit against Dormer, the driver, in the prior action for the full extent of his injuries, that is, the pain and suffering and expenses of the fractured femur as well as the aggravation of the injury. Instead, plaintiff sued Dormer for the injuries he caused, after which Dormer alone was released. Subsequently, plaintiff sued the doctor, hospital and manufacturer of the surgical supplies for their alleged negligent acts and breach of contract only from the time their respective conduct began; he does not claim damages for any injury Dormer may have caused him since he already recovered those damages in the prior action.

Id., 263 Pa.Super. at 180, 397 A.2d at 806.

Similarly, Mr. Smialek recovered from Mr. Drewel, the driver, damages for those injuries caused by his negligence, and separate damages from Passavant for the pain and suffering its negligence caused.

In *Embrey v. Borough of West Mifflin*, 257 Pa.Super. 168, 380 A.2d 765 (1978), this court was faced with a factual situation not unlike the one before us.

Plaintiff's decedent was injured in an automobile accident and died in the hospital while being treated for the injuries he received. Plaintiff brought suit against the borough in which the accident occurred alleging that a traffic signal had malfunctioned causing the accident. She also sued the doctor who treated decedent and the hospital. The jury was instructed that it could apportion damages among the defendants and it then found the medical defendants solely responsible for the death.

On appeal, the hospital argued that the other defendants were also jointly responsible for the death because they started the chain of events that led to it.

The court discussed this claim and wrote:

[Appellant] cites in support of that legal position *Thompson v. Fox*, supra, 326 Pa. 209, 192 A.2d 107. In *Thompson* the plaintiff was injured by an automobile driven by one Taylor and required medical treatment as a consequence. Plaintiff brought an action against Taylor for negligence and set forth all of his injuries, including those resulting from the medical care. The plaintiff later settled with Taylor and signed a formal release. Subsequently, he sued the attending doctor, alleging careless and improper treatment. The Supreme Court affirmed binding instruction for the defending doctor on the ground that the plaintiff had already been paid for his injuries in his settlement with Taylor. The court held that the liability of the original wrongdoer extended to the additional harm caused by negligent medical treatment necessitated by the original accident. The decision in *Thompson* is simply an application of Section 457 of the Restatement of Torts, Second. It is a holding that a plaintiff cannot recover twice for the same injury. Apportionment between the party who caused the accident and the doctor, both responsible, was not an issue and not discussed.

Id., 257 Pa.Super. at 180, 380 A.2d at 771, 772.

The court then upheld the apportionment. We do likewise. See also Restatement of Torts 2d §§ 434, 433.

■ The apportionment is not unfair. As Restatement § 433 states, the apportionment is a jury question. In *Embrey* no error was found in an apportionment that placed full responsibility on only the medical defendants. In that case, as in the present one, the jury was free to believe the medical expert who expressed the opinion that the decedent probably would have survived the accident absent the negligence of medical personnel and, therefore, to impose the greatest liability on them.

We will discuss appellant's remaining contentions only briefly.

■ Passavant argues that the question of whether adequate dosages of Pavulon were administered to the decedent should not have been submitted to the jury. In support of its argument, it cites the testimony of the doctor who treated the victim. The doctor was asked about the orders he had left pertaining to the drug and he explained that "...[T]he drug was given, and then a required dose is generally required at intervals, and this has to be left to the discretion of the individual, i.e., the nurse at the time."

Appellant's witness, then agreed with Mr. Smialek's allegation that the hospital determined the amount of Pavulon that was given to the patient. Of course, the jury could conclude that the doctor believed a reasonable amount of the drug had been prescribed and further that the hospital had not been negligent. However, while it may be relevant to the issue of whether the hospital was negligent, his approval of its actions in no way alters the essential point that the dosage was in the control of the hospital. The question of whether the drug was administered negligently was properly before the jury.

■ Finally, we find no merit to Passavant's claim that it was prejudiced by the appearance in a local newspaper of an article concerning the imposition of liability upon it in another case. There is no evidence that any juror saw the article which made no mention to the present action. The jury was instructed not to read newspapers or watch or

listen to news broadcasts before they were sequestered for deliberations, which was the next day. No prejudice was shown by appellant.

The judgment of the lower court is affirmed in its denial of motions for judgment notwithstanding the verdict and new trial filed by appellant-Passavant. The judgment is reversed in its denial of the motion for new trial filed by appellant-Smialek and the case is remanded for new trial at which the jury is to be charged in accordance with this opinion. That is, it is to be instructed on strict liability principles, not negligence and risk-utility concepts.

CERCONE, President Judge, concurs in the result.