## Erie Insurance Exchange v. Meza

*Michael Shay,* for plaintiff.
*Robert Liptak,* for defendant Lidia Meza.
*Charles Fonzone,* for defendant State Farm Mutual Automobile Insurance Company.

WILLIAMS, *P.J.,* December 26, 1984—This matter comes before the court on Erie Insurance Exchange's action for declaratory judgment pursuant to the Declaratory Judgments Act, 42 Pa. C.S.

§7531 et seq; Pa. R.C.P. 1601 et seq. We note at the outset that the exercise of jurisdiction over such an action is a matter of sound judicial discretion and is not a matter of right. State Farm Mutual Automobile Insurance Co. v. Semple, 407 Pa. 572, 180 A.2d 925 (1962); 42 Pa. C.S. §7537. The purpose of the Declaratory Judgments Act is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other relations, and is to be liberally construed and administered. Fidelity Bank v. Pa. Turnpike Commission, 498 Pa. 80, 444 A.2d 1154 (1982); 42 Pa. C.S. §7541. A declaratory judgment should not be granted where a more appropriate remedy is available. State Farm v. Semple, supra.

The parties have submitted the matter as a case stated, with all relevant facts stipulated to by counsel for the parties. Defendants Lidia Meza (individually and as administratrix of the estate of Amelia Meza) and State Farm Mutual Insurance Company have filed briefs with the court. After careful review of the matter, we find the following to be relevant.

## I. HISTORY OF THE CASE

On July 15, 1983, Adaminton D. Meza was the owner and operator of a 1972 Ford Pinto. On that date, Meza was operating his vehicle on Route 611 when he allegedly passed an intended exit. He then swerved back toward the exit, striking an enbankment and sign, and lost control of his vehicle. There was no mechanical malfunction of the vehicle. As a result of the accident, Amelia Meza, a two-month-old infant, was fatally injured, and Lidia Meza, Adaminton Meza's wife, was severely injured. Lidia Meza's injuries included the following: amputation of a portion of her left thumb, severed

tendons in her arm and hand, broken forearm, broken pelvis, amputation of a portion of her ears, traumatic injuries to her stomach, concussion, lacerations to her face and multiple scrapes, abrasions and contusions.

At the time of the accident, Adaminton Meza was covered by two automobile insurance policies, one issued by State Farm Mutual Automobile Insurance Company and one issued by Erie Insurance Exchange. Both policies listed a 15/30 limit (i.e. $15,000 per person coverage and $30,000 per occurrence coverage).

State Farm paid its policy limits of $30,000; to wit, $15,000 to Lidia Meza and $15,000 under a court-approved payment to the estate of Amelia Meza. Adaminton Meza and Lidia Meza executed a release to State Farm acknowledging that, in consideration of the $15,000 payment to Lidia Meza in her individual capacity, they would:

"release and forever discharge State Farm Insurance Company, insofar as its tort liability on Adaminton Meza's behalf is concerned (and not No-fault Liability or obligations) based on said company's assertion that its policy limits are fifteen thousand dollars ($15,000), . . . his [sic?] heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable or who might be claimed to be liable, . . ., from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which would have resulted or may in the future develope [sic] from an accident which occurred on or about the 15 [sic] day of July, 1983, at or near Rte. 611 Plumstead Twp. PA."

Subsequent to signing the release and receiving the money from State Farm, it was learned that the vehicle involved in the accident was also insured under a similar policy with Erie Insurance Exchange. The policy with Erie that was in effect at the time of the accident provided for the same limits as the State Farm policy with regard to tort liability (i.e., $15,000 per person, $30,000 per occurrence).

Lidia Meza, in her individual capacity and as administratrix of the estate of Amelia Meza, commenced an action in the Court of Common Pleas of Bucks County against Adaminton Meza seeking additional monies under the Erie policy, alleging that the injuries sustained by both Lidia Meza and by the estate and survivors of Amelia Meza were in excess of the $30,000 paid by State Farm.* At or about the same time, State Farm made demand on Erie, pursuant to the "other insurance" clause in State Farm's policy, for reimbursement for Erie's pro-rata share of State Farm's liability, namely, one-half of the total settlement or $15,000. (Erie's pro-rata share would allegedly be one-half since both policies had the same limits.)

Accordingly, Erie commenced this action in declaratory judgment to determine to whom it is liable.

## II. ISSUES

The primary issue before the court is a determination of the parameters of the release executed by

---

*It has been stipulated by the parties that:

(a) The non-economic detriment to the estate and survivors of Amelia Meza as a result of the accident in this case is in excess of $30,000.

(b) The non-economic detriment to Lidia Meza as a result of the injuries she sustained in this accident are in excess of $30,000.

Lidia Meza on November 11, 1983. Did it constitute a full and total release of all claims of Lidia Meza, both individually and as administratrix of the estate of Amelia Meza, against Adaminton D. Meza which arose out of the July 15, 1983 accident?

State Farm Mutual contends that its payment of the claims of Lidia Meza, in her individual capacity and as administratrix of the estate of Amelia Meza, settled all claims for damages arising out of any negligence on the part of Adaminton D. Meza for an automobile accident which occurred on July 15, 1983. State Farm directs the court's attention to the release signed by Lidia Meza in her individual capacity and to the court order approving payment to Lidia Meza in her capacity as administratrix for the estate of Amelia Meza as evidence of the alleged final settlement.

There can be little doubt, absent a clear showing of fraud or misrepresentation on State Farm's behalf, that such documents evidence a settlement of Lidia Meza's claims against State Farm. Both documents reflect the payment of State Farm's $15,000 per person/$30,000 per occurrence policy limits to Lidia Meza. The question arises, however, whether such documents also evidence a settlement of Lidia Meza's claims against parties other than State Farm. Lidia Meza contends that they cannot and do not.

Lidia Meza contends that the release she executed does not prevent her from claiming further sums from Adaminton Meza, as the negligent party, or from his other insurance carrier(s) since that was not the intention of the parties and since she was unaware of the existence of other coverage at the time the release was executed. She further contends that the court order approving payment of $15,000 to the estate of Amelia Meza did not operate

as a full and final settlement of the matter, it merely approved payment of tort claim benefits from State Farm to the estate of a minor as required by law.

## III. DISCUSSION

We note that it is undisputed that Lidia Meza signed the release of November 11, 1983, solely as an individual and not in her capacity as administratrix of the estate of Amelia Meza. Accordingly, that release could not in any way affect the rights of the estate of Amelia Meza. A release by one person cannot discharge the claims of another who is not a party to the release and whom the releasor has no power to bind. National Bond and Investment Company v. Gill, 123 Pa. Super. 341, 187 A. 75 (1936).

State Farm contends, however, that its court-approved payment to Lidia Meza, as administratrix of the estate of Amelia Meza, evidenced a final settlement of any and all claims of the estate for damages arising out of any negligence on the part of Adaminton D. Meza for the automobile accident which occurred on May 15, 1983. We cannot agree. The order of court approving State Farm's payment to the estate reads in full:

"And now, this October 28, 1983, in consideration of the within petition and upon motion of Liptak & Morales, attorneys for plaintiff, and after a hearing thereon, the court approves the payment of $15,000 to plaintiff in the above-captioned action.

By The Court . . ."

There is no mention of such payment being final settlement of the matter in either the court order or the petition upon which the order was entered. Paragraph 7 of the Petition to Approve Payment of Benefits in Insured Motorists' Claim reads:

"The Defendant [State Farm] is now desirous of settling the insured decedent's claim by paying the

decedents estate $15,000.00." Although that paragraph makes reference to a desire on State Farm's part to settle the estate's claim against it for $15,000, the policy limits, we cannot infer any intent beyond that which would preclude the estate from lodging other claims. We are unwilling to read such a limitation into a court order which merely approves payment of benefits to a minor's estate.

The parties have stipulated to the fact that the non-economic detriment to the estate and survivors of Amelia Meza is in excess of $30,000. Total policy coverage under both Erie and State Farm is $30,000. Thus, the $15,000 payment by State Farm cannot be found to be in full satisfaction of the estate's claim against Adaminton Meza. Accordingly, Linda Meza's action against Erie, insofar as it relates to her claim as administratrix of the estate of Amelia Meza, is not barred by either the release executed on November 11, 1983, or the court order of October 28, 1983.

The second issue before the court is whether the release executed by Lidia Meza in her individual capacity serves to bar any and all claims on her part for damages arising out of any negligence on the part of Adaminton D. Meza for the automobile accident which occurred on May 15, 1983. After careful analysis and review of applicable law we find that it does not. An otherwise enforceable release may be avoided where the releasor can show that it was executed by mutual mistake, as between [herself] and the releasee, as to a past or present fact material to the release. Snyder v. Penn Central Transp. Co., 296 Pa. Super. 69, 442 A.2d 300 (1982). Likewise a release ordinarily only covers such matters as may fairly be said to have been within the contemplation of the parties when it was given. Gateway Center Corp. v. Merriam, 290 Pa. Super. 419, 434 A.2d 823

(1981); Cady v. Mitchell, 208 Pa. Super. 16, 220 A.2d 373 (1966).

Under the facts of this case, we find that the release cannot be held to bar Lidia Meza's action, in her individual capacity, against Erie. Such could not have been within the contemplation of the parties when the release was given because Lidia Meza was unaware of the existence of the Erie policy at that point in time. We must presume that State Farm was also unaware of the existence of the Erie policy because to knowingly suppress such information could amount to fraudulent misrepresentation which would also vitiate a release.

State Farm argues that mistake as to total policy coverage is not a mutual mistake of fact upon which to set aside an otherwise enforceable release. We acknowledge that underestimation or inaccurate ascertainment of damages is not a mutual mistake of fact which can relieve a party from an otherwise valid release or settlement. Klein v. Cissone, 297 Pa. Super. 207, 443 A.2d 799 (1982); Bollinger v. Randall, 184 Pa. Super. 644, 135 A.2d 802 (1957). The reasoning behind such a policy is that to hold otherwise would be to effectively qualify every release or settlement since estimation of damages must, by its very nature, be inaccurate in many cases. Id. But that is not the case where total policy coverage is inaccurately determined. There is a definite ceiling to such claims in terms of policy limits and in terms of the time frame in which such claims may be filed. Accordingly, we do not accept State Farm's extension of Bollinger, and find that a mutual mistake as to total policy coverage may avoid an otherwise enforceable release. Snyder, supra.

We also reject State Farm's contention that such a determination permits Lidia Meza duplicative recovery for the same injury. It is a fundamental rule

of damages that a person injured by the tortious act of another is not entitled to more than one satisfaction of his/her damages. Rossi v. State Farm Automobile Insurance Co., 318 Pa. Super. 386, 465 A.2d 8 (1983). An injured party cannot recover twice for the same injury. Thompson v. Fox 326 Pa. 209, 192 A. 107 (1937); Smialek v. Chrysler Motors Corp., 290 Pa. Super. 496, 434 A.2d 1253 (1981). Under the stipulated facts of this case, however, there is no duplicative recovery. Lidia Meza's injuries were severe and extensive. The parties stipulated that:

"The non-economic detriment to Lidia Meza as a result of the injuries she sustained in this accident are in excess of $30,000." State Farm's per-person policy limits were $15,000. Erie's per-person policy limits are $15,000. Even if Lidia Meza were to receive the per-person limits of both policies, she would not be enjoying duplicative recovery.

It follows that, since Erie's admitted liability is its policy limits of $30,000, State Farm is not entitled to reimbursement from Erie for one-half of its policy limits already paid to Lidia Meza.

Wherefore, we enter the following

## JUDGMENT

And now, this December 26, 1984, it is the judgment of this court that neither the release executed on November 11, 1983, nor the order of court dated October 28, 1983, bar the action of Lidia Meza, individually and as administratrix of the estate of Amelia Meza, against Erie Insurance Exchange and that State Farm Mutual Automobile Insurance Company is not entitled to reimbursement from Erie Insurance Exchange.