**Furtek v. West Deer Township**

Before Soffel, Lewis and Brown, JJ.

*Zeno Fritz*, for plaintiffs.

*Max O. Siegel* and *Sylvan Libson*, for defendant.

SOFFEL, J., June 30, 1959.—This case is before the court on defendant's motions for judgment non obstante veredicto and a new trial.

By deed dated June 21, 1944, as recorded in the Recorder's Office of Allegheny County, in Deed Book Volume 2798, p. 626, Elizabeth Chambers, widow, conveyed to Frank Furtek and Mary Furtek, his wife, a parcel of land situated in West Deer Township, Allegheny County, which has a frontage of 551.20 feet on the northerly side of Rich Hill Road and extends northwardly along its easterly boundary 386 feet and along its westerly boundary 786 feet to the property of Joseph Lysek. By deed dated January 3, 1947, as recorded in the Recorder's Office, Allegheny County, in Deed Book Volume 2929, p. 373, Elizabeth Chambers conveyed to Frank Furtek and Mary Furtek, his wife, a second piece of property situated in West Deer Township, Allegheny County. This property has no frontage in Rich Hill Road but abuts on, and lies to the west of, the rear or northerly one-half of the tract plaintiffs acquired in 1944.

Rich Hill Road, from a point about 2,000 feet west of plaintiffs' property, slopes downward toward the

east, continues to do so in front of plaintiffs' land and then to a point some distance east of their premises. Plaintiffs' land, as well as the properties lying within the 2,000 feet west of their land owned by other persons, slopes downward in a general westerly direction. At a point near the northwesterly corner of plaintiffs' land and only a short distance south of its northerly boundary line, a small creek crosses it at an angle and then flows through the southerly part of Joseph Lysek's property a short distance north of plaintiff's land.

In 1944, when Mrs. Chambers deeded the first tract to plaintiffs, there was a sewer beneath the surface of Rich Hill Road at a point near the westerly boundary of plaintiffs' land, that carried surface water from the southerly side of the road to their property on the northerly side. This drainpipe was put in by defendant township in 1937 at the time Rich Hill Road was widened. The then owner, Mrs. Chambers, consented to the pipe being put in. She also, at about that time, executed a release to the township which is in evidence as defendant's exhibit "E".

Until 1952, there were two other drainpipes in Rich Hill Road to the west of plaintiffs' property and at higher elevations, which carried surface water from the southerly to the northerly side of that road and discharged it onto properties owned by other persons at places that were natural drainage points.

In 1952, defendant township closed the drainpipe which prior thereto had discharged its water upon the land owned by one Cesarini about 1,500 feet west of, and on the same side of the road as plaintiff's land and at a much higher elevation.

Between 1939 and 1952, before the Cesarini pipe was closed, the surface and condition of plaintiffs' property in the area affected by the drainpipe dis-

charging water onto their land remained "about the same" and no harm was done to it; the water so discharged was easily absorbed by the ground and no gullies or ditches ever appeared or existed. However, after the Cesarini pipe was removed, a much larger volume of water began to be discharged after every rainfall onto plaintiffs' land, with such force and velocity that it eroded a deep gully or ditch for several hundred feet along, and about 15 feet from, the westerly boundary of their property. In various ways, plaintiffs attempted to stop or counteract the effect of this additional water discharge on their property but were unable to do so. They notified the township commissioners and sought to have them rectify the condition. The township officials inspected the premises but failed to correct the situation. Subsequent to the closing of the Cesarini sewer in 1952, plaintiffs' property was damaged. After even ordinary rainfalls, in addition to torrenting along the eroded gully, the water then discharged from the drainpipe at plaintiffs' land flooded the rear or northerly portion of their property so that it "looked like a lake" and made that area untillable because the water also carried onto and deposited in that vicinity, cinders, stones and other debris.

When defendant township failed to act upon plaintiffs' complaint, plaintiffs instituted the present suit, alleging a continuing trespass. Defendant filed an answer and an amended answer in which it disclaimed liability upon the theories that only water naturally draining onto plaintiffs' property was being discharged by the pipe involved and that the previous owner of the premises had consented to the water being drained thereon and had given a release discharging the township from liability for damages.

The case came on for trial before Soffel, J., and a jury, which, in addition to hearing the evidence, viewed the property.

Plaintiff husband testified that his property had been depreciated in value, as a result of the discharge of the additional water and its effects, in the amount of $5,000. Defendant's expert stated that in his opinion it had been damaged only to the extent of $200. The jury returned a verdict for $2,500 in favor of plaintiffs.

Two issues are raised by defendant's motions, one legal, the other factual. They are:

I. (a) Did defendant township have the right to close the drain across the road at the Cesarini property and, if so, is the diversion of water upon plaintiffs' land damnum absque injuria?

(b) Does the release given to the township by plaintiffs' predecessor in title release defendant from any subsequent claim for damages in construction of a drain at plaintiffs property?

II. Is there evidence to support a verdict in favor of plaintiff in the sum of $2,500?

We shall speak first to the motion for judgment non obstante veredicto.

Defendant's motion for judgment non obstante veredicto is predicated on two distinct propositions: (1) That the township supervisors, acting within their discretionary power, had the right to close and abandon a surface water drain previously constructed by the township, and such action would be without liability to the property onto which the additional drainage flowed which was not left in any worse condition than that in which it was before the drain was constructed; (2) that plaintiffs were bound by their predecessor-in-title's consent and release executed prior to the construction of the drain.

The evidence adduced at the trial establishes these facts:

Plaintiffs acquired, in 1944 and 1947, two adjoining tracts of land in West Deer Township, which land was formerly owned by Elizabeth Chambers. These tracts lay on the northerly side of Rich Hill Road, a public way maintained by the township, and had a frontage of 551.21 feet on the road.

The general terrain of the area is such that a portion of plaintiffs' land lies almost at the base of the area watershed. Rich Hill Road, on which plaintiffs' land abuts, slopes toward the east, generally following the watershed ridge. Drainage from the land on the southerly (the higher) side of Rich Hill Road was at one time conducted to the northerly side of the road by means of two conduits or drains, one crossing the higher portion of the road (toward the west) and draining onto the land of one Cesarini, and another crossing the road at almost its lowest point and draining onto plaintiffs' property. These drains were installed as part of a road improvement made by the township in 1938-39. At that time the matter of the drains was discussed with Mrs. Elizabeth Chambers, the then owner of the Furtek property, and she verbally consented to having them placed; at the same time, Mrs. Chambers signed a release discharging the township from any liability for damages resulting from the road improvement.

Prior to Mrs Chambers' ownership, there was installed on the Furtek property a tile sewer, running from a point almost opposite the mouth of the township drain down to the creek which intersected the Furtek property at the rear.

The Furtek land was not used by Mrs. Chambers and was overgrown with grass and weeds. While the lowest part of the Furtek land was considered by some

as always moist and by other as swampy at all times, there was no apparent washing or unusual erosion present.

No particular mention of the township drain was made at the time of the sale of the land to plaintiffs' and plaintiffs did not discover the drain until some years later. Following the purchase of the property by plaintiffs, the low area near the township drain was kept as pasture, except for one year (about 1949-1950) in which plaintiffs plowed that area and planted corn, returning it to grass the following year.

In 1952, the township drain at the Cesarini property was blocked off by the township. Shortly thereafter, plaintiffs noticed damage to their property caused by the additional flow of surface water. This damage took the form of flooding of the low-lying lands toward the rear of plaintiffs' land following even ordinary rains and the creation of a deep gully or ditch running along the general line followed by the tile sewer from the township drain toward the creek.

In 1953, a "flash flood" occurred in the area that flooded plaintiffs' lands and uncovered the tile sewer leading to the creek.

Plaintiffs complained to the township commissioners repeatedly, who made surveys of plaintiffs' property. Some time between 1955 and 1958, the township installed another cross-drain above the blocked drain at the Cesarini property. This additional drain has reduced the flow of surface water materially.

The first of defendant's propositions in support of its motion for judgment non obstante veredicto, namely, that the township had the right to close the Cesarini drain without liability since that act left plaintiffs' land subject only to the same drainage to which it had been subject before the installation of

the Cesarini drain, is based on a false premise. The closing of the Cesarini drain did subject the Furtek property to surface drainage which had previously sought other drainage paths, and in this respect and to this extent the drainage problem, which admittedly always existed, was worsened by the closing of the Cesarini drain. This fact is borne out by the testimony of Frank Koziol, plaintiffs' witness, who testified that there was a drainage area, "a valley", at the Cesarini property which did not empty into the Furtek sewer, and by the testimony of defendant's expert witness, Mose Smith, who testified that the drain at the Cesarini property handled up to 13 percent of the drainage from the natural watershed. The closing of the drain which handled this natural surface drainage threw the burden of receiving that drainage, or part of it as Smith contended, on plaintiffs' property. The rule of law governing such diversion of surface waters is clearly set forth in Woolheater v. Mifflin Township, 74 Pa. Superior Ct. 557 (1920), at pages 559 and 560:

"The plaintiff was required to fight the 'common enemy' as best he could, but he was not required to bear more than his share of the battle. The water that naturally reached his property he had to take care of, *but the township had no right to divert the water to his land and thus increase the area of the watershed draining over his premises*. It has never been held 'that a municipal corporation may throw a body of water upon the property of one of its citizens if it would not naturally flow there. It may not throw upon the land of A the water which flows upon the land of B": [Citing cases] It is true that under the Act of June 13, 1936, P. L. 560, section 32, supervisors are given large powers in relation to drains and ditches along public roads, but that act does not authorize supervisors to close up the natural watercourse which drains certain

property and turn it into another course to the detriment of the property holder.".

Defendant relies on Lorah v. Amity Township, 35 Pa. Superior Ct. 529 (1908), and DeNoble v. Wilkins Township, 74 Pa. Superior Ct. 389 (1920). These cases, however, are predicated on the finding of fact that the water which defendant was accused of diverting onto plaintiff's land had, before defendant's acts, naturally flowed onto plaintiff's lands. These cases therefore cannot control the case at bar.

We are of the opinion that the evidence clearly establishes the fact that after the township closed the Cesarini drain more water was drained onto plaintiffs' land and the condition worsened and that this imposed liability on defendant.

We shall next consider defendant's second proposition, that plaintiffs were bound by the consent and release executed by their predecessor-in-title.

The verbal consent of Mrs. Chambers to having the drain installed under the road near her property should be considered independently of the signed release. While it is held in Messinger v. Washington Township, 185 Pa. Superior Ct. 554, 137 A. 2d 890 (1958), that a similar consent on the part of the landowner created a license which subsequently became irrevocable, the facts and the results sought in the Messinger case and in the case at bar are so different that the former does not control. In the Messinger case, the owners were seeking to have the drain which emptied into their land removed, asserting that the license granted the township to maintain it was revocable. In the case at bar, there is no question of the right of the township to have its drain placed either at the Cesarini property or at the Furtek property but only an action to recover for alleged improper use of the drains. While the court in the Messinger case did say that it agreed with the chancellor's finding that the

owner, by granting the license, waived all rights to damages, that proposition is only dictum and should, we think, be subject to the qualification that the owner only waived all rights to damages arising out of the use for which the original license was granted.

The release signed by Mrs. Chambers reads, in part:

"I do further release and discharge the Township of West Deer from any claims, actions or causes of action which arose or might arise from the widening of the said highway upon which my property abuts."

The release, on its face, goes only to those damages which might arise directly from the widening of the highway or indirectly from acts necessary to and a part of that improvement. The words of a release should not be construed to extend beyond the express consideration mentioned so as to make a release for the parties which they never intended or contemplated: Brill Estate, 337 Pa. 525, 12 A. 2d 50 (1940), Zurich General Accident and Liability Insurance Company, Ltd., v. Klein, 181 Pa. Superior Ct. 48, 121 A. 2d 893 (1956). The latter case contains the quotation of the Superior Court, speaking in Cockcroft v. Metropolitan Life Insurance Company, 125 Pa. Superior Ct. 293, 189 Atl. 687 (1937) :

" 'It is a settled rule of construction that an agreement comprehends only those things in respect to which it appears the contracting parties proposed to contract, and not others they never thought of . . . the release cannot be allowed to embrace anything beyond it.' ": page 299.

While it is held in Updegrove v. Penna. Sch. V. R. Co., 132 Pa. 540, 19 Atl. 283 (1890), that a release given by a landowner to a railroad as to "all claims for damages which may accrue by reason of the taking and using of the land" barred recovery for damages from flooding due to an inadequate culvert installed by the railroad, it is clear that such a release

is far broader than that which Mrs. Chambers signed. It is equally clear that the release signed by Mrs. Chambers did not contemplate damage to her lands by the flow of surface waters which the jury, by its verdict, found were diverted by the township from their natural course. The release, in our judgment, related to such items as the destruction of shrubs and trees, damage to buildings and fences and other injuries of a like nature.

Having determined that the release signed by Mrs. Chambers did not encompass the subject matter of this suit, it need not be decided whether or not plaintiffs had actual or constructive notice of the existence of the drain at the time of purchase.

We hold that the release given to the township by Mrs. Chambers does not operate to release defendant from a claim for damages relating to the subsequent construction of a drain at plaintiffs' property.

The motion for judgment non obstante veredicto will be refused.

We shall now consider defendant's motion for a new trial.

1. Defendant's contention that the verdict is against the law has been considered in our dismissal of its motion for judgment non obstante veredicto.

2. Defendant's contention that the verdict is against the evidence and against the weight of the evidence are not supported by a reading of the testimony.

The only area in which these averments have any validity whatsoever is that concerning the fact of additional drainage onto the Furtek property by reason of the closing of the Cesarini drain. Defendant's witness, Mose Smith, an experienced civil engineer, testified that with the closing of the Cesarini drain only 7-8 percent more of the total drainage from

the watershed went into the Furtek drain and onto the Furtek property, and that this was insignificant when compared with the 87 percent which always concentrated on that point. Mr. Smith's testimony was contradicted by several witnesses for plaintiffs, witnesses who were not experts in the matter of topography but who testified from actual observance of the amount of water approaching and passing through the Furtek drain after the closing of the Cesarini drain. Frank Furtek testified that the drain flowed full and "very hard and (with) very hard pressure" after the closing of the Cesarini drain. John Schwab, owner of the property across the road from the Furtek property, testified that the amount of water that flowed through the drain under his driveway and then on to the Furtek drain was, after the closing of the Cesarini drain, greater and that "there was a good bit of difference" and that the increased drainage was "twice as much". Mr. Schwab further testified that after the closing of the Cesarini drain the township notified him that he would be required to put in a bigger driveway drain, which he did. Further Mr. Smith admitted that his opinion was based on an approximation of the watershed involved based on his own knowledge and observations.

The issue of how much additional drainage flowed onto the Furtek land was submitted to the jury which was directed to resolve the contradictory testimony. The jury's verdict indicates that it believed the additional drainage was sufficient to cause the damage complained of, whether that additional drainage constituted an increase of 7-8 percent or 50 percent.

3. Defendant's averment that there are no reasonable standards in the evidence to support the verdict is worthy of discussion.

Frank Furtek testified that the value of his real estate prior to the damage caused by the additional

drainage was $20,000 and its value after that damage was $15,000. Defendant's witness, Edward E. Strauss, a licensed real estate broker and an experienced appraiser, placed a before-damage value at $8,500 and an after-damage value at $8,300.

Mr. Furtek's testimony, as owner of the subject property, was possibly colored but the jury was so instructed by the court. His testimony was a proper subject of consideration by the jury, and his status as owner merely affected the weight to be afforded his testimony by the jury.

Mr. Strauss' testimony was to be equally considered by the jury. The fact that the jury did not accept his testimony is supported by the additional facts that Mr. Strauss was not a resident of the area, although somewhat familiar with it, that much of his appraisal work had been for mortgage purposes which, as a matter of course, require a conservative report, that he did not consider the additional access to the rear of the Furtek property when making his appraisal, that he was not aware that a periodic flooding of the low-lying Furtek lands took place, and that he was unfamiliar with and had no knowledge of any existing zoning laws or ordinances governing the area.

Mr. Furtek's testimony provided a standard for determining damages from the owner's point of view, and Mr. Strauss' testimony provided such a standard from the point of view of a disinterested expert. The weight to be given this testimonny was for the jury.

The motion for a new trial will be refused since there is evidence to sustain the verdict.