434 A.2d 823

## GATEWAY CENTER CORPORATION

v.

## John W. MERRIAM and The Fidelity Bank.

### Appeal of John W. MERRIAM.

Superior Court of Pennsylvania.

Argued Feb. 2, 1981.

Filed Sept. 18, 1981.

Petition for Allowance of Appeal Denied Dec. 21, 1981.

---

1. We note that the lower court sustained a demurrer to the lesser offense of homicide by vehicle. R.R. at 122a.

420

John Rogers Carroll, Philadelphia, for appellant.

Marc H. Jaffe, Ardmore, for appellees.

Before WICKERSHAM, POPOVICH and WATKINS, JJ.

WICKERSHAM, Judge:

This is an appeal from a final injunction which forbids appellant, John W. Merriam, to aid Northland Equities, Inc.

in the prosecution of its damage action pending in the federal court in which Merriam is also a counterclaim defendant. Not only does the injunction forbid Merriam from helping Northland Equities, Inc. in the prosecution of its case, but it also forbids him to communicate with Northland's counsel, who also was defending Merriam in the counterclaim, and forbids him to use that lawyer any further in that defense. Finally it forbids Merriam to receive any part of the proceeds of that claim.

The theory on which the lower court entered this injunction is that by providing assistance to Northland Equities, Inc., the plaintiff in the federal case, Merriam breaches the terms of a release he gave to the instant plaintiff, Gateway Center Corporation, in 1975.

In the fall of 1970, the General Services Administration of the United States published a solicitation for bids for a lease of office space in the Philadelphia area, and three qualified bidders responded. The first bidder was the plaintiff, Gateway Center Corporation (hereinafter Gateway), which had no space but proposed to construct a building for the purpose of housing government offices at 36th and Market Streets in Philadelphia. The second qualified bidder was John W. Merriam, appellant, owner of the Curtis Building located at 6th and Walnut Streets, and the third qualified bidder was Northland Equities, Inc. (hereinafter Northland Equities), equitable owner of the Terminal Commerce Building located at 401 North Broad Street, Philadelphia. In February, 1971, the General Services Administration awarded the bid to Gateway.

Merriam alone protested and subsequently filed suit in *Merriam v. Kunzig et al.*, Civil Action No. 71–2262 (subsequently captioned *Merriam v. Sampson et al.*) to set aside the award and lease on the ground that it had been fraudulently procured, based upon specific allegations of material misrepresentations by Gateway in its bid as to its ownership or dominion over the ground, its building plans, its permits and its construction financing. In March, 1975, on the eve of trial, Gateway settled its case with Merriam for a pay-

ment of $1,500,000 and on March 31, 1975, Merriam gave Gateway a release which provides that John W. Merriam, as the releasor, discharges all claims he and certain described privies of his, have or had or ever would have against Gateway or certain named individuals, as the releasees. It is a general release in which the releasors are described as follows:

> JOHN W. MERRIAM ... does for himself and his successors, assigns, trustees, agents, employees, attorneys, legal representatives, heirs, executors and administrators, acting in their capacities as such, and on behalf of any firm or corporation in which he owns the controlling interest, the successors or assigns of any such firm or corporation, the past, present and future officers, directors, agents and employees of such firm or corporation (all of whom are hereinafter included under the term 'Releasors') ... discharge the said Releasees ....

Reproduced Record at 22a.

The claims discharged are described in the release as follows:

> from all manner of actions, causes of action, suits, debts, dues, sums of money, accounts, reckoning, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, obligations, claims and demands whatsoever, both at law, in admiralty, or in equity, which against the Releasees or any of them the Releasors or any of them have ever had, now have or which they or any of their successors hereafter can, shall or may have, for, upon or by reason of ....

*Id.* at 22a–23a.

The subject matter of the release claims is described as "any matters ... which arise out of the following:"

> 1. the civil action entitled *Merriam v. Sampson, etc. et al.* ...;
>
> 2. the award of a lease to Gateway Center Corporation by the General Services Administration ..., the competition for this lease, the negotiations ..., the performance

under the award . . . , the financing or the construction of the Gateway Building;

3. a protest by Releasors . . .

4. communications or conduct by Releasors relating in any way to the matters set forth in paragraph 1 through 3, *supra* . . . .

*Id.* at 23a.

In April, 1976, Merriam entered into an agreement with Northland Equities to provide documents gathered by him in connection with the case of *Merriam v. Sampson* for its use in bringing suit against Gateway and its owners and other persons alleged to be in conspiracy with them in procuring the fraudulent award of the lease in February, 1971. The parties to this agreement were Merriam, Northland Equities, and L. G. Schafran. The agreement provided that Merriam would lend his documents to the other parties and in return therefor would receive a percentage of the net recovery, if any.

Thereafter, in June, 1976, Northland Equities filed suit against Gateway and its owners and approximately twenty other defendants in Civil Action No. 76–1730 in the United States District Court for the Eastern District of Pennsylvania, charging them jointly and severally with conspiracy to deprive Northland Equities of the opportunity to bid in free and fair competition unaffected by fraud for the government lease. In November, 1976, the Gateway defendants filed a counterclaim against the plaintiff in that action, Northland Equities, as well as Merriam and other defendants, charging them with conspiring fraudulently to sue Gateway and its owners in the federal *Northland* action. The counterclaim alleges, *inter alia*, that Northland's offer was not responsive to the requirements of the solicitation; hence, its bid was not qualified.[1]

1. The Statement of Questions Involved posed by the appellant are set forth in his appellate brief as follows:

Does a general release which only discharges the releasor's claims against the releasee prohibit the releasor from contractually assisting another party with a similar claim against the releasee in return for contingent share of the proceeds of that party's claim?

As we have seen, the instant suit in equity was brought by Gateway to enforce specific performance of a document entitled "RELEASE BY JOHN W. MERRIAM" executed March 31, 1975, by Merriam, and to enjoin Merriam from assisting the claimants in the *Northland* litigation pending in the Eastern District of Pennsylvania, United States District Court. The assistance which Merriam was allegedly rendering to Northland Equities was alleged to be a violation of the general release signed by Merriam. Following the filing of proposed findings of fact and conclusions of law and final argument thereon held before the Honorable Horace A. Davenport of the Court of Common Pleas of Montgomery County, an adjudication and a decree *nisi* was rendered on January 2, 1980. Merriam filed exceptions to that decree on January 11, 1980, and on July 18, 1980 the court *en banc* revised the decree *nisi*[2] and entered a final decree enjoining Merriam from the following acts:

(1) from aiding, abetting, assisting or promoting the *Northland* action, Civil Action # 76–1730 in the United States District Court for the Eastern District of Pennsylvania or any other litigation directly or indirectly against plaintiff which relates to or arises from the award of a government lease in February 1971.

(2) from an[y] communication with John Carroll, Esq. or the *Northland* plaintiffs relating directly or indirectly to

May a Pennsylvania equity court forbid a party to a federal action to communicate with his fellow defendants in that action or to use the same counsel in that action that his codefendants have been using?

Where a complaint seeks to enjoin one party to a contract from compliance therewith, are the other parties thereto indispensable parties to the action?

We find no merit whatsoever in the last two questions and will not further consider them.

**2.** The decree *nisi* rendered on January 2, 1980, was revised to exclude orders directing John W. Merriam to remove all documents relating to *Merriam v. Kunzig et al.*, Civil Action No. 71–2262, from the possession of Northland Equities and its counsel. The court of common pleas *en banc* released Merriam from these obligations, because all parties had conceded in arguments on March 26, 1980, that the possession of the *Kunzig* documents was moot.

the prosecution of the *Northland* action damage claim against Gateway.

(3) from the use of John Carroll, Esq. as his attorney for his defense in the *Northland* action counterclaim, as the use of the same attorney would effectively nullify the above directives against cooperation of Merriam with the *Northland* plaintiffs.

(4) from receiving, directly or indirectly, any proceeds of the *Northland* action or any other litigation arising from a cause of action relating to or arising from the 1971 lease award.

Reproduced Record at 295a–296a.

From this final decree of the court of common pleas, Merriam brings the instant appeal.

▮▮▮ Where the terms of the release and the facts and circumstances existing at the time of its execution indicate that the parties had in mind a general settlement of accounts, the release will be given effect according to its terms. A release ordinarily only covers such matters as may fairly be said to have been within the contemplation of the parties when it was given. *Cady v. Mitchell,* 208 Pa.Super. 16, 220 A.2d 373 (1966).

In an extended and erudite opinion, Judge Davenport reached certain basic conclusions and we quote with approval from the following portion:

The parties to the Release Agreement and the collateral documents of March, 1975 were responsible parties with a grasp of business matters and of the facts existing at the time their bargain was struck. Gateway and Merriam both knew that Merriam had assembled expensive and time-consuming files in preparation for the *Kunzig* action. Both parties also were fully aware that Merriam was not the only possible plaintiff in a case based upon alleged wrongful award of the February 1971 lease. Both knew that Northland, specifically, had been low bidder and was disappointed by the award to Gateway. Merriam had

even negotiated seriously with the *Northland* group on a possible joint action against Gateway before proceeding alone in the *Kunzig* action. Neither party was ignorant of the threat that the *Northland* group represented to Gateway's interest.

A meeting of minds was reached between Merriam and Gateway, and embodied in the General Release, based on surrounding circumstances.

The Release was therefore worded as the 'discharge' from *all manner of actions*, from *all sums of money*, upon *any matters whatsoever* which the Releasor [or obligor, Merriam] have *ever had, now have*, or which *hereafter* (he) *can, shall or may have* against the Releasees [obligees, the Gateway parties], which directly or *indirectly* are *based upon arise from, involve*, or *relate to* the award of a long-term lease to Gateway. (Emphasis supplied).

Merriam must have comprehended that he gave up not only his right to be plaintiff in the *Kunzig* action or any other action, but that he had relinquished totally all right to profit, even indirectly, in 'any manner of action', or to participate in 'any matters whatever' 'related to' the 1971 lease award. For this promise Merriam was to receive considerable money payments [over time]. There has been no failure of consideration on the part of Gateway. Gateway was buying its peace, but did not get what it had bargained for.

Flatly stated, Merriam, for good consideration, gave up to Gateway, and to Gateway alone, all rights to any profit he was possibly entitled to from the allegations made of unlawful award of the February 1971 lease. He then went forth and sold his admittedly expensive and time-consuming work product, assembled for the *Kunzig* action, to potential plaintiffs with a similar cause of action, for a share of any profits they might be able to make by pursuing a new case.

It is apparent that Gateway would not pay consideration of $1,500,000.00 merely for the temporary relief of an

agreed order dismissing the *Kunzig* action with prejudice and Merriam's pledge to refrain from instituting personally a similar case. Upon inquiry into the 'primary purpose of the obligee' (in this instance, Gateway), the conclusion is inescapable that payment was made to wipe out *in toto* all possible present or future danger to itself, directly, or indirectly, through the medium of Merriam.

Merriam argues that the June 1976 Agreement did not breach the 1975 Release because his name does not appear as a plaintiff in the *Northland* action, and that he released only 'his own' rights against Gateway, not those of the *Northland* plaintiffs. Such an argument is pure sophistry and should not be tolerated in a Court of Equity.

It does not follow that because the *Northland* action represented interests other than his own, that Merriam was therefore free to join himself to those interests for indirect gain after freely promising not to do just such an act, and for which [forbearance] he was to receive a princely sum.

Lower ct.op. at 14–16.

■ We agree with the conclusions reached by the chancellor that Merriam executed a binding agreement with Gateway in the document entitled "RELEASE BY JOHN W. MERRIAM" dated March 31, 1975, and that surrounding circumstances included the fact that potential plaintiffs with the cause of action identical to Merriam were known to exist by both parties to the release agreement. Merriam's agreement to give documents assembled for his own action to Northland Equities and his personal assistance in preparing the *Northland* action, as well as his agreement to enrich himself with a percentage of any monies recovered therein, clearly indicated that he had not released or discharged Gateway. We conclude that by his conduct Merriam patently breached his release agreement of 1975 to Gateway.

Final decree affirmed.