441 A.2d 384

**EXPLO, INC., Appellant,**

v.

**JOHNSON & MORGAN and Mid-State Energy Corporation and Johnson & Morgan t/d/b/a Mid-State Energy Corporation, jointly and severally.**

Superior Court of Pennsylvania.

Argued Nov. 10, 1980.

Filed Feb. 5, 1982.

134

Daniel J. Fleck, Pittsburgh, for appellant.

Carl A. Belin, Jr., Clearfield, for appellees.

Before HESTER, BROSKY and VAN der VOORT, JJ.

BROSKY, Judge:

Explo, Inc. has appealed from the order of the court below granting the petition to open judgment filed by Don R. Johnson and William Morgan, trading and doing business as Johnson & Morgan. The central issue for our determination is whether the court below abused its discretion in opening the judgment. The court below held that Johnson & Morgan had a meritorious defense; that the petition to open was promptly filed; and that Johnson & Morgan had a reasonable explanation for their failure to respond. We disagree, and accordingly reverse the order of the court below.

Appellant's chief contention on appeal is that the three requirements which must be satisfied in order for a judgment to be opened were not met here. The facts are as follows. On July 17, 1979, Explo filed a complaint in assumpsit against "Johnson & Morgan and Mid-State Energy Corporation and Johnson & Morgan trading and doing business as Mid-State Energy Corporation," to recover the sum of Fifty-eight thousand fifty-two and 42/100 ($58,052.42) dollars. The complaint alleged as follows:

*     *     *     *     *     *

2. Defendant Johnson & Morgan (hereinafter referred to as Johnson) is a business with offices located in Snow Shoe, Centre County, Pennsylvania 16874.

3. Defendant Mid-State Energy Corporation (hereinafter referred to as Mid-State) is a Pennsylvania corporation with an office located on Route 53 in Houtzdale, Clearfield County, Pennsylvania 16651.

4. Defendant Johnson is the owner of Defendant Mid-State.

5. Defendant Johnson trades and does business as Mid-State Energy Corporation which has an office at Route 53, Houtzdale, Clearfield County, Pennsylvania 16651.

6. At all times herein mentioned, Johnson did business in the Commonwealth of Pennsylvania directly and through Mid-State Energy Corporation.

7. As owner of Mid-State Energy Corporation, Johnson assumes the obligations and liabilities of Mid-State.

In Count I, "Explo vs. Mid-State Energy Corporation," Explo averred that Mid-State had contracted on open account with Explo for explosives; that Explo provided said explosives from September 1, 1978 through March 21, 1979; that Explo sent invoices to Mid-State for the explosives; and that Mid-State had failed to pay the contract price of $58,052.42 for said explosives.

In Count II, "Explo vs. Johnson," [1] Explo averred that "as owner of Mid-State, Johnson accepted the obligations and liabilities of Mid-State;" that as owner of Mid-State it accepted the explosives provided to Mid-State by Explo and did not pay for them; and that it has as a result been "unjustly enriched because the explosives have not been paid for."

Johnson & Morgan was served with the complaint July 19, 1979. On August 13, 1979, Explo filed a "Praecipe for Default Judgment," requesting the Prothonotary to enter judgment in default of answer in favor of Explo and

1. Paragraph 2 of the complaint above indicates that "Johnson" refers to "Johnson & Morgan."

"against all Defendants, Johnson & Morgan and Mid-State Energy Corporation and Johnson & Morgan t/d/b/a Mid-State Energy Corporation, jointly and severally, in the sum of $58,052.42 Dollars." Judgment was entered on that date.

On September 27, 1979, Johnson & Morgan filed a petition to open judgment. The petition alleged, inter alia:

\* \* \* \* \* \*

3. That Don R. Johnson, in his individual capacity, is the local manager for Mid-State Energy Corporation and as such orders materials and signs checks for said corporation.

4. That Don R. Johnson is a minority stockholder in Mid-State Energy Corporation which is a going concern and which is engaged in the business of mining coal in the area of Houtzdale, Clearfield County, Pennsylvania.

The petition goes on to state that after receiving the complaint in assumpsit, Don R. Johnson contacted the secretary of Explo and advised him "that he and Mr. Morgan did not own Mid-State Energy Corporation nor were they doing business through Mid-State Energy Corporation and that the action should not have been filed against them." According to the petition, Mr. Johnson was advised to contact Explo's attorney, but the attorney was out of town when Mr. Johnson tried to reach him. According to the petition, a secretary for Johnson & Morgan called the attorney's office as well. From these calls, the petition alleges,

9. [T]he petitioners understood ... that action was being deferred against Johnson & Morgan and did not learn until September 26, 1979 that a judgment had been entered against all defendants in the above-captioned action.

The petition went on to state that

10. [A] good and valid defense exists in this case inasmuch as Mid-State Energy Corporation is a going concern and that the averments that Johnson & Morgan is doing business through or that they "own" Mid-State Energy Corporation are totally without foundation.

On October 11, 1979, an evidentiary hearing was held at which Mssrs. Johnson and Morgan testified. Don Johnson testified that Johnson & Morgan has no relationship to Mid-State, although it does purchase coal from Mid-State. He further testified that he was aware that Mid-State had purchased explosives from Explo and stated that the default judgment was proper as against Mid-State, since "Mid-State obviously had the use of the explosives . . . and owes the money . . ."

With regard to receipt of the complaint, Johnson testified that he was out of town at the time it was served and that he did not open it until approximately the 8th of August, 1979, and did not bring it to his attorney's attention until approximately September 27, 1979. When asked why he waited until then, Johnson responded:

A. Because I was busy with other portions of the business. And whenever I had come upon that, I just thought, well, there's a judgment [sic] that's not true, that's not correct, and I don't think it needs my attention at this time because Johnson and Morgan didn't owe the money. I knew Mid-State Energy owed it, but I knew Johnson and Morgan didn't.

Q. Did you not receive Notice of the Judgment mid-August of '79.

A. I would say I probably did. I don't recall right offhand because that's when I was busy.

Q. Why did it take six weeks after the Notice of Judgment which was two weeks after Notice of the Complaint, and four weeks after it was served, before you consulted an attorney and filed a Petition?

A. Because I was busy during those six weeks and I just felt as though it was something that could be dealt with later that Johnson and Morgan, you know, wasn't reliable [sic] for it.

Q. *So you have the same reasons for not filing your Petition and for not filing the Answer, you were busy, is that correct?*

A. *That's right.* [Emphasis added.]

Both Johnson and Morgan testified that the reason they were so busy was because their business was having serious financial troubles and they were engaged in continuous negotiations with creditors which took up all their time.

It is well settled that a petition to open judgment is a matter of judicial discretion, which is to be exercised only when three conditions are met: (1) the petition has been promptly filed; (2) a reasonable excuse is given for the failure to respond; and (3) a meritorious defense is shown. *Bollinger v. Cressman*, 267 Pa.Super. 535, 407 A.2d 39 (1979); *Balk v. Ford Motor Co.*, 446 Pa. 137, 285 A.2d 128 (1971). Moreover, we will not reverse the decision of the lower court absent an abuse of discretion. *Kraynick v. Hertz*, 443 Pa. 105, 277 A.2d 144 (1971).

Here, we find that the court below abused its discretion in granting Johnson & Morgan's petition to open. The court below found that Johnson & Morgan were "in perilous financial straits" and that in attempting to deal with numerous creditors, Explo's complaint was understandably "pushed into the background." The court went on to hold that the delay in filing the petition was not of extraordinary length, and that upon taking the matter up with counsel, the petition to open was immediately filed.

While it is clear from the record that Johnson & Morgan believed that they were not liable for Mid-State's purchase of explosives from Explo and its subsequent lack of payment therefor, the fact remains that Johnson & Morgan did not attempt to assert this defense by means of a responsive pleading. Although Johnson & Morgan did try to contact Explo's counsel to explain why it was not liable for the debt, counsel was out of town, and at that point the necessity for setting forth its defense in the form of an answer to the complaint should have been clear to Johnson & Morgan. At the hearing, Johnson acknowledged that he had not contacted Johnson & Morgan's attorney until approximately six weeks after the default judgment had been entered, because he was "busy." In *Van Horn v. Alper*, 253 Pa.Super. 524,

385 A.2d 462 (1978), we stated, in holding that appellant had not satisfactorily explained his default in answering the complaint:

> It is equally difficult to understand or excuse the cavalier manner in which the appellant treated the complaint after it was served upon him . . . He simply ignored the document until he received notice that a default judgment had been taken, although the first page of the complaint contained a full and complete notice to defend. . . . [Appellant] was not inexperienced with legal matters because he had already hired counsel to defend him in the earlier equity action . . . Nevertheless it is averred on behalf of the appellant that he "reasonably assumed" that the complaint and notice pertained to the first equity action and, as a consequence, did nothing until he received notice of the default judgment. Even if he believed that the papers served upon him related to the prior equity action, he must have known that he had a duty to respond to it if he read the paper. . . .

Id., 253 Pa.Super. at 529–530, 385 A.2d at 465.

In *Bollinger v. Cressman,* supra, appellant consciously chose to ignore the complaint in assumpsit filed against him because of his belief that he was not personally liable. Appellant was president of a corporation which failed to pay for certain electrical work performed by appellee. Since the complaint alleged that the work was performed for the corporation, appellant concluded that he could not be held personally liable, and therefore simply "put it away." Judgment by default was entered against appellant, and he filed a petition to open one month later. In holding that appellant had not given a reasonable excuse for his failure to answer appellee's complaint, we noted that appellant had read the complaint and had consciously set it aside and ignored it until after judgment by default was taken. We stated:

> Appellant's failure to respond to the complaint was a conscious and deliberate act, albeit based upon an erroneous assumption regarding his personal liability . . . Al-

though a petition to open is addressed to the equitable powers of the court [citations omitted], the equitable maxim of vigilantilous et non dormientibus jura subveniunt[2] is especially appropriate in this case. We must conclude that given appellant's blatant disregard for his responsibilities, particularly in light of his involvement in the business world and the affairs of several corporations, the evidence clearly supports the finding of the court below that appellant failed to reasonably explain his failure to answer appellee's complaint.

Id. 267 Pa. at 540–541, 407 A.2d at 42. See also *Tronzo v. Equitable Gas Co.*, 269 Pa.Super. 392, 410 A.2d 313 (1979).

In the case at bar, appellees Johnson and Morgan are businessmen, who should have known that lawsuits cannot just be ignored.

As in the *Van Horn* and *Bollinger* cases, supra, this is a situation in which a responsive pleading was not filed because of a belief on the part of appellee Johnson & Morgan that the action did not pertain to it and that therefore it did not have to respond. Thus, the failure to respond was a conscious and deliberate act. Under these circumstances, we hold that Johnson & Morgan has not shown a reasonable excuse for its failure to respond. *Van Horn v. Alper*, supra; *Bollinger v. Cressman*, supra.

█ Finally, there is some doubt as to whether Johnson & Morgan has shown a meritorious defense. A petition to open a default judgment must set forth a defense in precise specific, clear and unmistaken terms and must set forth the facts on which the defense is based. *Ecumenical Enterprises, Inc. v. Nadco Const. Co., Inc.*, 253 Pa.Super. 386, 385 A.2d 392 (1978). Here, the petition merely avers that "a good and valid defense exists in this case inasmuch as Mid-State . . . is a going concern and that the averments that Johnson & Morgan is doing business through or that they "own" Mid-State . . . are totally without foundation." No facts are alleged in support of the "defense." Nor is it specifically

**2.** The law aids those who are vigilant, not those who sleep upon their rights.

alleged that Johnson & Morgan does not owe the sum for which Explo seeks payment. In addition, there is some confusion as to the relationship of Mssrs. Johnson and Morgan to Mid-State Energy Corporation. Although stating that "Johnson & Morgan" had no relationship with Mid-State, Don Johnson testified that he is general manager of Mid-State, while Mr. Morgan is office manager. In short, even if "Johnson & Morgan" are not liable for the purchase of the explosives; this defense was not set forth in the petition in clear, unmistaken terms nor was it set forth in a timely answer to Explo's complaint. Nor was the filing of the petition to open on September 27, 1979 "prompt" under the circumstances.

For these reasons, we hold that the court below abused its discretion in granting Johnson & Morgan's petition to open, and we accordingly reverse the order of October 30, 1979.

Order reversed.

HESTER, J., concurs in the result.