533 A.2d 481

James J. BUTTERMORE and Ann Buttermore,
His Wife, Appellants,

v.

ALIQUIPPA HOSPITAL; Michael Zernich, M.D., Beaver County Sports Medicine, Inc., Donald Kerr, R.P.T., Michael Zernich, M.D. and Donald Kerr, R.P.T. T/D/B/A Physio–Therapy and Sports Medicine Clinic, Rodney Altman, M.D. and William Dumeyer, M.D., Appellees,

v.

Frances E. MOSER, Appellee.

Superior Court of Pennsylvania.

Argued June 2, 1987.

Filed Nov. 10, 1987.

Alfred S. Pelaez, Pittsburgh, for appellants.

John W. Jordan, IV, Pittsburgh, for appellees.

Before POPOVICH, MONTGOMERY and CERCONE, JJ.

MONTGOMERY, Judge:

The Plaintiff–Appellants, James J. Buttermore and his wife, Ann, filed the instant appeal from an order of the lower court which granted a motion for summary judgment which had been filed by the Defendant–Appellees. The primary issue presented for review is whether the lower court was correct in finding that a release signed by the Appellant husband precluded him from asserting the claims he raised against the medical service provider Appellees in this suit. We are constrained to find that the lower court erred in its grant of summary judgment in the circumstances of this case.

In the review of this appeal, we start with the recognition that summary judgment is governed by Pa.R. C.P. 1035(b). That Rule, in pertinent part, states:

> The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The trial court, in reviewing a motion for summary judgment, must accept as true all well-pleaded facts in the non-moving party's pleadings, as well as any admissions on file, giving the non-moving party the benefit of all reasonable inferences which may be drawn. *Mattia v. Employers Mutual Companies*, 294 Pa.Super. 577, 440 A.2d 616 (1982). Moreover, the record as a whole must be examined in a light most favorable to the party opposing the motion for summary judgment. *Community Medical Services of Clearfield, Inc. v. Local 2665, American Federation of State, County and Municipal Employees, AFL–CIO*, 292 Pa.Super. 238, 437 A.2d 23 (1981).

Mindful of such concepts, we turn to the record of the instant case. It indicates that on December 3, 1981, Appellant James Buttermore was injured in an automobile accident when his vehicle was struck by an automobile operated by the Appellee Frances Moser. The collision caused Mr. Buttermore to suffer lacerations to the head, cervical injury, and numbness in his feet and hands. Mr. Buttermore was transported by ambulance to Appellee Aliquippa Hospital, where he subsequently was examined and received treatment by some of the other Appellees. Subsequent to his release from the hospital, Mr. Buttermore received additional medical care for his injuries from other Appellees.

In this suit, Mr. Buttermore has asserted that he sustained damages from the Appellee health care providers as a result of their alleged negligence in failing to diagnose a fracture of his neck, and in prescribing care and actually treating him in a manner which caused an aggravation of such injuries, and a worsening of his condition. He maintained that such negligence caused him to suffer irreversible spinal cord trauma and spinal nerve damage. In the suit, Appellant Ann Buttermore sought to recover damages for loss of consortium.

On November 14, 1983, approximately two weeks before the instant suit was filed, the Plaintiff executed a form release in consideration of the payment of $25,000 by State Farm Mutual Insurance Company, the insurer of Frances Moser, the other motorist. That form release, in relevant part, states:

> ... I/We being of lawful age, for myself/ourselves, my/our heirs, administrators, executors, successors and assigns hereby remise, release, acquit and forever discharge Frances Moser, et al. his/her successors and assigns, and/or his, her, their, and each of their associates, heirs, executors and administrators and any and all other persons, associations and/or corporations, whether herein referred to or not, of and from all known or unknown, suspected or unsuspected, past, present and future

claims, demands, damages, actions, third-party actions, causes of action, or suits at law or in equity, including claims for contribution and/or indemnity of whatever nature, for or because of any matter or thing done, omitted or suffered to be done, on account of or arising from damage to property, bodily injury or death resulting or to result from an accident which occurred on or about the 3rd day of December, 1981 at or near Aliquippa, Pennsylvania. for which I/We have claimed the said Frances Moser, et al. to be legally liable, but this release shall not be construed as an admission of such liability....

Evidence concerning the circumstances surrounding the signing of the release were explained in the deposition testimony of Mr. Buttermore, and also in an Affidavit which was filed in the lower court in opposition to the Appellees' motion for summary judgment. From such sources, it is clear that Mr. Buttermore was not represented by his own attorney in the course of his settlement with Ms. Moser's insurer, the Ohio Casualty Company. The settlement resulted after a meeting which lasted a total of less than one hour. During the discussions at that meeting, a representative of Ms. Moser's insurer specifically stated that the $25,000 offered in settlement did not represent full compensation for Mr. Buttermore's injuries because any verdict the Appellant would obtain would most certainly be in excess of $25,000. However, that sum was the maximum limitation of Ms. Moser's policy. Further, Ms. Moser's insurer advised Mr. Buttermore that their insured had no assets from which an additional recovery might be made. A representative of Mr. Buttermore's own insurer, State Farm Mutual Automobile Insurance Co., was apparently involved in the negotiations. That involvement led to an understanding that State Farm Mutual would accept $4,000 of the total $25,000 settlement, in satisfaction of any subrogation claims, and State Farm Mutual was therefore made a party to the release which was signed. Mrs. Buttermore did not sign the release and was not named as a party to it. In his Affidavit, the husband Appellant declared that at no time during the negotiations of the settlement or during the

execution of the release did any person ever mention or allude to persons or entities other than Frances E. Moser and State Farm Mutual. Moreover, there was never a mention of any accident or act of negligence except the incident of December 3, 1981, when the automobile collision occurred. Specifically, he asserted that none of the Appellees were mentioned during the course of such negotiations, and there was no discussion of any negligence or omissions other than the purported negligent act of Ms. Moser in driving her vehicle into the vehicle operated by the Appellant. In the Affidavit, James Buttermore also states: "In signing the release it was my intention to release only Ms. Moser for her negligent act of driving into me on December 3, 1981. I had no intention whatsoever of releasing any of the Defendants for their subsequent and wholly distinct acts of negligence."

In an opinion which it filed in this case, the lower court explained its rationale for granting summary judgment. In essence, it explained that it felt compelled to hold that the release, described above, precluded the Appellants from proceeding with any suit against the Appellees. The court determined that its actions in the case were guided by the decision in *Thompson v. Fox*, 326 Pa. 209, 192 A. 107 (1937). Moreover, the lower court stated that it could not avoid application of the rule of *Thompson v. Fox*, even if it determined that the discharge of the Appellees release was not contemplated by the parties, at the time when the Appellant signed the release. The court further explained that if it were deemed appropriate that it consider the intention of the parties surrounding the signing of the release, it could not say that the Plaintiffs did not contemplate the release of claims for aggravation of the injuries at the time when Mr. Buttermore signed the release document. We disagree with the lower court's analysis of applicable law, and also find that it abused its discretion with regard to the determination of whether or not a discharge of claims against the Appellees was intended in connection with the signing of the release document by the Appellant husband.

*Thompson v. Fox,* was a case which involved a factual situation not dissimilar with the one presented in the instant case. In *Thompson,* a plaintiff insured in an automobile accident brought an action against the other driver in the United States District Court. Thereafter, the plaintiff settled his suit, giving a general release to the other driver. Subsequently, he instituted suit in the Court of Common Pleas against a hospital and physician who provided treatment for the injuries which he received in the accident. In the case, the Supreme Court affirmed binding instructions for the defending doctor on the ground that the plaintiff had already been paid for his injuries in his settlement with the other driver. The Supreme Court reasoned that the liability of the original wrongdoer extended to the additional harm caused by negligence arising in the medical treatment necessitated by the original accident.

In the half century since it was decided, our Court has thoroughly analyzed *Thompson v. Fox,* and enunciated the specific circumstances under which its ruling has application. A lead decision in providing guidance to lower courts, and litigants, in that regard, was *Lasprogata v. Qualls,* 263 Pa.Super. 174, 397 A.2d 803 (1979), which was authored by then President Judge Cercone, my esteemed colleague on this Panel. *Lasprogata* involved a situation in which a motorist who had been injured in a motor vehicle accident brought an action against various medical care providers as a result of alleged negligent treatment of injuries which he had sustained in the motor vehicle accident. One of the defendants joined the other driver in the action, as has occurred in the instant case. The injured plaintiff had previously brought a trespass against the other driver, which was concluded with the signing of a general release. The medical provider sought joinder on the basis that the injuries to the plaintiff were proximately caused solely by the other driver's negligence in the accident, and alternatively, that the other driver was jointly liable for contribution with the medical provider defendants. The other driver moved for summary judgment based upon the release he had executed with the plaintiff in the prior action. The

lower court granted summary judgment and the medical provider appealed that decision to our Court.

In affirming the decision of the lower court in *Lasprogata,* our Court specifically recognized that a tortfeasor who causes the original injury, and a medical provider who subsequently aggravates the condition or causes a new injury, are not joint tortfeasors. It was noted that the acts of the original wrongdoer and the negligent physician were severable as to time, with neither having the opportunity to guard against the other's acts, and that each had been guilty of breaching a different duty owed to the injured party. In setting forth these conclusions, then President Judge Cercone cited *Thompson v. Fox,* and its holding, and also discussed the Restatement (Second) of Torts, § 457, which provides: "If the negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third parties in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or negligent manner." Judge Cercone explained that § 457 was not inconsistent with the principle of separate liability between the tortfeasor and the treating physician in such circumstances, because the injured plaintiff could have brought suit against the tortfeasor for the full extent of his injuries, including pain and suffering, and expenses of the aggravation of the injury caused during the course of medical treatment. Further, he pointed out our Court's earlier decision in *Embrey v. Borough of West Mifflin,* 257 Pa.Super. 168, 390 A.2d 765 (1978). In *Embrey,* which also directed attention to the application of the *Thompson v. Fox* holding, we stated: "The decision in *Thompson* is simply an application of Section 457 of the Restatement of Torts, Second. It is a holding that a plaintiff cannot recover twice for the same injury. Apportionment between the party who caused the accident and the doctor, both responsible, was not an issue and not discussed." 257 Pa.Super. at 180, 390 A.2d at 772.

It is also noteworthy that in *Embrey,* our Court relied upon § 433A of the Restatement of Torts (Second), which states: "Damages for harm are to be apportioned among two or more causes where ... there is a reasonable basis for determining the contribution of each cause to a single harm." Further, in both *Embrey,* and in *Lasprogata,* it was pointed out that under § 434 of the same Restatement, it is the court's function, rather than the jury's to determine whether the harm to the plaintiff is capable of apportionment among two or more causes.

The foregoing principles and guidelines have been followed in several subsequent decisions. See, for example, *Smialek v. Chrysler Motors Corporation,* 290 Pa.Super. 496, 434 A.2d 1253 (1981); *Voyles v. Corwin,* 295 Pa.Super. 133, 441 A.2d 381 (1982); and *Harka v. Nabati,* 337 Pa.Super. 617, 487 A.2d 432 (1985).

■ Our decision in *Lasprogata v. Qualls* not only discussed the issue of separately identifiable acts of negligence on the part of the original wrongdoer and subsequent medical providers, and the correct approach for a court to follow on the apportionment of damages in such circumstances, but it also addressed the court's function concerning the release signed by the plaintiff in circumstances analogous to those presented in the instant case. The decision made it clear that when there is a question of whether the release given to the original tortfeasor by the injured party is intended to cover all compensation, including that for injuries sustained in subsequent medical treatment, the crucial issue becomes whether or not the release was intended to release all parties and be for full compensation, or whether, in the alternative, it was intended only to release the original tortfeasor.

■ Because we have concluded that the lower court erred in this case in broadly applying the holding of *Thompson v. Fox,* the issue of the court's interpretation of the intent of the parties to the release becomes critical. As discussed above, although it explained in its opinion that it felt no obligation to interpret the intent of the parties to the

release, the lower court nevertheless set forth its conclusion on this matter. In that regard, it stated: "Even if we could avoid the rule of *Thompson v. Fox,* in the manner suggested by the plaintiffs, we are not convinced that we could conclude that the release of these defendants was not within the parties' contemplation when the release was given." We simply find no basis in the record to support that determination by the lower court.

Instructive guidance in these circumstances is provided in the recent decision of our Court in *Sparler v. Firemen's Insurance Company of Newark, New Jersey,* 360 Pa.Super. 597, 521 A.2d 433 (1987). That case involved the issue of whether a general release of a third-party tortfeasor operated to discharge the separate contractual obligation of a motor vehicle insurer to provide underinsured motorist benefits to the plaintiff. Our Court set forth the following regarding the rules to be applied in the resolution of such issues:

> Written releases are construed according to the rules governing the construction of contracts generally. 76 C.J.S. Release § 38 (1952). A release normally covers only such matters as can fairly be said to have been within the contemplation of the parties when the release was given. *Estate of Bodnar,* 472 Pa. 383, 387, 372 A.2d 746, 748 (1977); *In re Jones & Laughlin Steel Corp.,* 328 Pa.Super. 442, 456–457, 477 A.2d 527, 534 (1984); *Gateway Center Corp. v. Merriam,* 290 Pa.Super. 419, 425, 434 A.2d 823, 826 (1981). The intention of the parties to a written release is paramount, and in construing a release, a court should adopt an interpretation which, under all of the circumstances, "ascribes the most reasonable probable and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *General Mills, Inc. v. Snavely,* 203 Pa.Super. 162, 168, 199 A.2d 540, 543 (1964). See: *Unit Vending Corp. v. Lacas,* 410 Pa. 614, 617, 190 A.2d 298, 300 (1963); *Village Beer and Beverage, Inc. v. Vernon D. Cox and Co.,* 327 Pa.Super. 99, 107, 475 A.2d 117, 121 (1984). Although a court will

not relieve the parties of the effect of an improvident contract, it must not allow a "rigid literalness" to be used to create an improvident contract for the parties contrary to their intent. *Mowry v. McWherter*, 365 Pa. 232, 238, 74 A.2d 154, 158 (1950). Thus, the words of a release "should not be construed to extend beyond the express consideration mentioned so as to make a release for the parties which they never intended or contemplated." *Brill's Estate*, 337 Pa. 525, 527, 12 A.2d 50, 52 (1940). See: *Furtek v. West Deer Township*, 19 Pa. D. & C.2d 169, 178, aff'd, 191 Pa.Super. 405, 156 A.2d 581, 585 (1959). 360 Pa.Super. at 601, 521 A.2d at 434–5.

In *Sparler*, while affirming the lower court's decision in favor of the insurer on other grounds, our Court determined that the only reasonable interpretation of the release, when considered in light of the circumstances surrounding its execution, was that the plaintiff did not intend to discharge his insurer from its contractual obligation to him. In reaching this determination, our Court deemed it significant that the insurer was not a party to the release, had not negotiated to reduce its obligations under the policy, and paid no consideration to be discharged from any such obligation. It was concluded that to interpret the release as discharging the insurer, under such circumstances, would be to insert a benefit for which no separate consideration was paid, and which would not appear to have been within the contemplation of the parties.

The need for the court to examine all of the relevant facts and circumstances, and not just the language of the release, is also made clear in *Cady v. Mitchell*, 208 Pa.Super. 16, 220 A.2d 373 (1966). There our Court pointed out: "A release ordinarily covers only such matters as may fairly be said to have been within the contemplation of the parties when it was given and the words used in a release ought never to be extended beyond the consideration; otherwise it would make a release to the parties, what they never intended or contemplated." 208 Pa.Super. at 19, 220 A.2d at 374.

In the instant case, the lower court considered the question of the intention of Mr. Buttermore regarding the release in connection with its resolution of the defense motion for summary judgment. At that stage, the court had before it the language of the form release, the uncontradicted deposition testimony of Mr. Buttermore, and the Affidavit he had submitted. From such sources, it is clear that there is no dispute that the Appellees were not parties to the negotiation of the form release, were not named in it, and did not provide any consideration to the Appellant in connection with the release. Moreover, Mr. Buttermore's sworn testimony, which was not rebutted, indicated that he only intended to release Frances Moser when he signed the release, and accepted a financial settlement from her insurer, and did not intend to release the Appellees. The fact that the Appellant instituted litigation against all of the Appellees only a couple of weeks later certainly creates the inference that he did not intend to discharge his claims against them when he had signed the release prepared by Ms. Moser's insurer.

In light of all of these factors, we find that the lower court abused its discretion in determining that the release was completed with the intention of discharging all present or potential claims against the Appellee medical providers. There is simply no evidence to support such a conclusion. Accordingly, we must reverse the order of the lower court which granted summary judgment to the Appellees based upon the release, and remand the case to the trial court for further proceedings in the case.

■ Finally, we must also briefly address the Appellants' contention that the lower court erred in dismissing the claims of Mrs. Buttermore when it granted summary judgment in favor of the Appellees. We agree with this contention. Mrs. Buttermore was never a party to the release which her husband signed, and we find no basis in the present record to foreclose her right to proceed on her loss of consortium claims.

The judgment of the lower court is hereby reversed, and this case is remanded for further proceedings. Jurisdiction is not retained.

POPOVICH, J., files a dissenting statement.

POPOVICH, Judge, dissenting:

I dissent on the basis of my Concurring Opinion in *Sparler v. Firemen's Insurance Company of Newark, New Jersey,* 360 Pa.Super. 597, 521 A.2d 433 (1987).